
FILED
2019 Jan-03  PM 05:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

STEPHANIE M. RONEY,       )
                                 )
       Plaintiff,         )
                                 )
v.                          )     CASE NO. 5:18-cv-01482-CLS
                                 )
CITY OF HUNTSVILLE,     )
ALABAMA,                 )
                                 )
       Defendant.     )

**BRIEF IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS**

This brief is respectfully submitted in support of the City of Huntsville's motion to dismiss Plaintiff's First Amended Complaint (Doc. 27).

## I.    Matters Alleged in the Complaint

Plaintiff's First Amended Complaint alleges that she has worked as an employee with the City's Parks and Recreation Department since 2004. (Doc. 27 ¶ 12). Like the original complaint, the First Amended Complaint (hereinafter "complaint") includes a significant amount of apparently irrelevant background details concerning conduct well outside any applicable statute of limitations.

The complaint claims that while she was working at the City's Natatorium facility, she complained three times—most recently on January 29, 2012—about racial or sexual statements made by her colleagues, including by an employee named

Mick Roney (Id. ¶¶ 15-16, 18, 22-25). Plaintiff alleges that a few days following her January 29, 2012 complaint, she had a confrontation with another City of Huntsville employee, who in turn alleged that Plaintiff had threatened him. (Id. at ¶ 27). Plaintiff alleges that immediately following this confrontation — indeed, on the same day, February 2, 2012 — she was transferred to the City's Williams Aquatic Center. (See id. ¶¶ 19, 28). Plaintiff also affirmatively alleges that the co-worker who complained about her ultimately sought a warrant, resulting in Plaintiff's arrest shortly thereafter for threatening a Natatorium employee (id. ¶ 30). Plaintiff does not allege any further conduct by the City between February 2, 2012, and November 4, 2016, nor does she further explain how these background events actually support any of her actual claims. (See id. ¶ 32).[1]

Plaintiff's allegations pick back up in late 2016, when her complaint alleges the City was preparing to close Williams, and was in the midst of substantial renovations to the Natatorium. (Id. ¶ 33). The complaint alleges that due to these impending closures and renovations, the City informed Plaintiff on November 4, 2016 that she was to be transferred to a third City facility, the Showers Center. (Id. ¶ 32). Plaintiff states that she complained at the time that this transfer would require her to work a

---

[1] Plaintiff clearly states that she is **not** raising any claims pertaining to any activity occurring before November 4, 2016, but rather that her allegations concerning that time period are somehow meant to establish the City's "discriminatory motive and intent." (E.g., Doc. 27 ¶ 51).

shift that she found less desirable. (Id. ¶ 36). Plaintiff alleges that she suggested the City move one of her male colleagues to the Showers Center instead of her, and permit her to move back to the Natatorium (from which she concedes she had been removed following allegations that she threatened a co-worker, ultimately resulting in her arrest). (Id. ¶¶ 28, 30, 36). Plaintiff avers that the City denied this request, citing Plaintiff's past negative history with employees at the Natatorium. (Id. ¶ 38).

Plaintiff goes on to allege that Mick Roney — her former colleague from the Natatorium — was now working at the Showers Center. (Id. ¶¶ 35, 39). Plaintiff alleges that a preexisting and non-work-related PTSD condition was "exacerbated" when she realized she would be working again with Mick Roney. (It is entirely unclear when Plaintiff first complained of Mick Roney's presence at the Showers Center, though she does not claim to have raised this issue when she was first informed of her transfer to the Showers Center. (See id. ¶ 39)). Plaintiff instead alleges that as of November 8, 2016, she "was forced to take medical leave" due to "the severity of Plaintiff's PTSD." (Id. ¶ 39).

Plaintiff does not explain whether this initial medical leave was approved by her employer, whether she informed her employer of the situation, or whether she timely submitted FMLA paperwork to ensure that any leave was job-protected. Plaintiff implies, however, that she did not take appropriate steps to obtain FMLA

leave for at least 10 days following her leave. Plaintiff alleges that it was not until November 18, 2016 that Plaintiff informed Byron Thomas, the head of the City's Human Resources department, that her PTSD had "worsened due to the possibility of having to work with Roney." (Id. ¶ 40). Plaintiff claims that during this conversation she asked Thomas at this time to rescind her transfer, but she does not indicate how Thomas responded. (Id.). Regardless, Plaintiff alleges she continued to take medical leave, now evidently citing an elbow injury as well as her PTSD (id. ¶ 41), and the complaint alleges she did not submit FMLA paperwork until November 28, 2016. (Id. ¶ 44).

Plaintiff next alleges that on January 3, 2017, while she was still on leave, a supervisor called her and told her she was being terminated. (Id. ¶ 43). Plaintiff alleges that she contacted the City later *that same day*, at which point the City immediately "reversed" the termination decision. (Id. ¶¶ 45-46). Plaintiff alleges that her medical leave continued, unaffected, until she returned to work on January 19, 2017. (Id. ¶ 39). Indeed, Plaintiff alleges that she *still* works at the Showers Center, apparently in the same position and at the same pay grade that she has held for years. (See id. ¶ 47). She contends that on some unspecified date or dates after she filed a Charge of Discrimination with the EEOC concerning the aforementioned events, the City's Parks and Recreation Director "instructed" Plaintiff's supervisor to threaten

her with termination and to "counsel" her on the use of sick and personal leave,
though she includes literally no details whatsoever to flesh out these mysterious and
vague allegations. (Id. ¶ 49). The complaint does *not* allege that any supervisor
actually followed through on these alleged instructions, and Plaintiff clearly alleges
that she remains employed in the same capacity as before. (Id. at ¶ 13).

Plaintiff seeks through her complaint a variety of remedies for what she
characterizes as unlawful discrimination, retaliation, and interference with her FMLA
rights — all arising out of the transfer to the Showers pool in November 2016. In
addition to seeking monetary damages, plaintiff also seeks back pay and front pay
(see, e.g., id. at ¶¶ 58, 67, 76). However, her complaint includes no allegations
whatsoever that she ever suffered any loss of pay — and again, she allegedly remains
employed by the City in the same position as before.

## II.   <u>Argument</u>

### A.   **Plaintiff's Title VII Sex Discrimination Claim in Count I is**
### **Due to Be Dismissed**

Count I of the complaint asserts that the City engaged in disparate treatment
by (1) transferring Plaintiff from Williams to the Showers Center (see id. ¶ 32), and
(2) denying her *subsequent* request to transfer to the Natatorium (see id. ¶¶ 37-38,
52). Neither of these alleged actions by the City amounted to an adverse employment

decision sufficient to trigger Title VII. Because Plaintiff has not established an adverse employment action, she has failed to make out a *prima facie* case of discrimination.

An adverse employment action is a *sine qua non* for a Title VII claim of discrimination. "A plaintiff can prevail on a Title VII disparate-treatment claim by demonstrating that her sex was 'a motivating factor' for a particular ***adverse employment decision*** . . . ." Smith v. City of New Smyrna Beach, 588 Fed. Appx. 965, 975 (11th Cir. 2014) (quoting 42 U.S.C. § 2000e-2(m)) (emphasis supplied). For purposes of a Title VII discrimination claim, however, only a "*serious and material* change in the terms, conditions, or privileges of employment" constitutes an adverse employment action. See Jefferson v. Sewon Am., Inc., 891 F.3d 911, 920-21 (11th Cir. 2018) (citing Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001)). Under this standard, it is well established that

> a lateral transfer (or denial of a transfer request) is ordinarily not regarded as an adverse employment action under Title VII merely because the employee subjectively finds one position preferable to the other, absent some evidence that the plaintiff suffered a material loss of pay, prestige, or other quantifiable benefit.

Richardson v. Jackson, 545 F. Supp. 2d 1318, 1327 (N.D. Ga. 2008) (citing, e.g., Weston-Brown v. Bank of Am. Corp., 167 Fed. Appx. 76, 80 (11th Cir. 2006), and Wall v. Trust Co. Of Ga., 946 F.2d 805, 808 (11th Cir. 1991)) (emphasis supplied);

6

see also, e.g., Smith v. Holder, 2014 WL 3867615, at *4 (N.D. Fla. Aug. 6, 2014) (citing Davis, 245 F.3d at 1239) ("The Eleventh Circuit has made it clear that reassignment of job duties will rarely be considered adverse without economic ramifications, which Plaintiff did not encounter."). Here, Plaintiff's allegations do not indicate that either the City's decision to transfer her to the Showers Center or its denial of her subsequent transfer request resulted in any "material loss of pay, prestige, or other quantifiable benefit." Richardson, 545 F. Supp. 2d at 1327. Rather, by all indications, Plaintiff continued (and continues) to hold the same position, earn the same pay, and receive the same benefits that she has previously received over the years. Such a lateral transfer (or denial of a transfer request), without more, cannot constitute an adverse employment action. See id.

Plaintiff cites only one purportedly adverse outcome that she allegedly faced as a result of the City's decisions concerning her lateral transfer: the requirement that she work a shift that she found to be less desirable. (Doc. 27 ¶ 34). However, courts have held that "changed work hours . . . are generally not actionable under Title VII." Hunter v. Gen. Shale Prods., 2006 WL 8431590, at *4 n.7 (N.D. Ga. Feb. 6, 2006) (citing Hartsfield v. Miami-Dade County, 90 F. Supp. 2d 1363, 1374 (S.D. Fla. 2000)). In particular, reassignment from one shift to a later shift, without "any difference in pay, benefits, responsibility level, prestige, or duties," does not

constitute an adverse employment action for purposes of a disparate treatment claim under Title VII. See, e.g., Lawson v. City of Pleasant Grove, 2016 WL 2338560, at *7 (N.D. Ala. Feb. 16, 2016), *R&R adopted*, 2016 WL 1719667 (N.D. Ala. Apr. 29, 2016) (holding that reassignment from evening shift to night shift "is not itself an adverse employment action"). After all, decisions regarding employee shift assignments are "at the very heart of" an employer's judgment and expertise concerning its ability to "allocate its assets in response to shifting and competing market priorities." See, e.g., Medearis v. CVS Pharmacy, Inc., 646 Fed. Appx. 891, 897-98 (11th Cir. 2016) (citing Davis, 245 F.3d at 1239) (holding that change in employee's hours does not constitute an adverse employment action for purposes of Title VII).

Here, Plaintiff has not alleged that her new shift assignment resulted in less pay, less prestige, a reduction in work hours, or any other loss of quantifiable benefit. As such, Plaintiff cannot show that the City's decisions with respect to her lateral transfer produced an injury or harm sufficient to amount to any materially adverse employment action. See, e.g., Lawson, 2016 WL 2338560, at *7; see also Toney v. Montgomery Job Corps, 2006 WL 691188, at *7 (M.D. Ala. Mar. 15, 2006) (holding that "[m]erely changing [an employee's] hours, without more, does not constitute an adverse employment action" where employee did not show the new shift was less

8

prestigious or offered different pay or benefits).[2] For all of these reasons, Plaintiff's Title VII discrimination claim must be dismissed.

## B.   Plaintiff's Title VII Retaliation Claim in Count II is Also Due to Be Dismissed

Count II of the complaint asserts that the City retaliated against Plaintiff in violation of Title VII both before and after she filed the EEOC Charge underlying this action. (Doc. 27 ¶¶ 59-67). However, Plaintiff's allegations do not show that any actions taking by the City before the filing of this Charge amounted adverse employment actions that were causally related to protected activity — that is, she has failed to make out a *prima facie* case of retaliation. As to her claims of post-Charge retaliation, Plaintiff has failed to exhaust her administrative remedies, plus she still has not made out a *prima facie* case because she has not plausibly alleged that the post-Charge retaliation was causally connected in any way to the Charge she filed. Accordingly, Plaintiff's Title VII retaliation claim is due to be dismissed in full.

---

[2] Although Plaintiff cannot establish an adverse employment action in any event, it bears mentioning that even if the change in Plaintiff's *shift* could constitute a sufficient injury or harm for Title VII purposes, this would not be enough to establish that the City's denial of her request to *transfer to the Natatorium* constituted an adverse employment action. Nothing in the complaint suggests that Plaintiff would have been assigned to a more favorable shift if she had been transferred from the Showers Center to the Natatorium. At most, the allegations of this pleading establish that the shift change was *entirely* the result of the City's *earlier* decision to transfer Plaintiff away from Williams, which Plaintiff acknowledges was necessitated by the impending closure of that facility. (See Doc. 27 ¶¶ 33-34). In other words, Plaintiff has not plausibly alleged that the shift change was even avoidable, much less adverse.

i.   *Plaintiff Has Failed to State a Retaliation Claim as to Any Pre-Charge Activity*

In order to state a prima facie case for retaliation under Title VII, a plaintiff must show (1) that she engaged in protected activity; (2) she suffered a "materially adverse" employment action; and (3) that this adverse employment action was "causally related to the protected activity." Morales v. Ga. Dep't of Human Res., 446 Fed. Appx. 179, 183 (11th Cir. 2011) (citing Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir. 2008)). In the context of a Title VII retaliation claim, "[a] materially adverse action is one that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Id. (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)). Under this standard, Title VII "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Id. (quoting Burlington, 548 U.S. at 67). To establish causation, a plaintiff must demonstrate "that his or her protected activity was a but-for cause of the alleged adverse action by the employer." Smith v. City of Fort Pierce, Fla., 565 Fed. Appx. 774, 778 (11th Cir. 2014) (citing Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013)).

For reasons similar to those addressed in the preceding section of this brief, Plaintiff has failed to sufficiently allege that either of the two decisions made by the

10

City—to transfer her from Williams to the Shower Center, and to deny her subsequent request to transfer to the Natatorium—constituted adverse employment actions. Even under the more liberal standard applied in the Title VII retaliation context, the caselaw is clear that a lateral move such as the type alleged here, without more, cannot constitute an adverse employment action. See, e.g., Worley v. City of Lilburn, 2009 WL 10668430, at *12 (N.D. Ga. June 3, 2009) (quotation omitted) ("Even in the context of retaliation claims, '[c]ourts have held that routine reassignments are not adverse employment actions.'"), *R&R adopted*, 2009 WL 10672381 (N.D. Ga. Sept. 9, 2009), *aff'd on other grounds*, 408 Fed. Appx. 248 (11th Cir. 2011). In particular "[c]hanges to shift assignments or work schedules, absent more, are insufficient to allege an adverse employment action." Rowell v. Gestamp Ala., LLC, 2018 WL 4954071, at *3 (N.D. Ala. Oct. 12, 2018) (citing Jackson v. Hall Cnty. Gov't, 518 Fed. Appx. 771, 773 (11th Cir. 2013)); see also Worley, 2009 WL 10668430, at *12 ("Indeed, '[w]here assignments fall within the duties of a plaintiff's position, receiving unfavorable schedules or work assignments . . . do[es] not rise to the level of [an] adverse employment action.'"). The same standards apply to the *denial* of a requested transfer, where (as here) the plaintiff alleges no facts showing that the

11

denial itself results in any adverse consequences at all.[3] Cf., <u>Richardson</u>, 545 F. Supp. 2d at 1327. Accordingly, Plaintiff's retaliation claim concerning pre-Charge activity (*i.e.*, related to matters actually contained within her EEOC Charge of Discrimination) is due to be dismissed on this basis alone.

However, even if the City's decisions could amount to adverse employment actions, Plaintiff's retaliation claim is still due to be dismissed due to lack of any causal connection between those actions and any protected activity. The explicit allegations of the complaint make clear that the City decided to transfer Plaintiff away from Williams *not* because of any protected activity, but because "the Williams Aquatic Center was slated to close" in several months. (<u>Id</u>. ¶ 33). Taking the allegations of the First Amended Complaint as true, it is undisputed that Plaintiff was due to be transferred from Williams *solely* because of the facility's impending closure, *regardless* of any alleged protected activity that she may have engaged in many years earlier. In other words, because her transfer from Williams was completely unrelated to any protected activity, see <u>Morales</u>, 446 Fed. Appx. at 183, and would have **had** to happen regardless of some allegedly improper motive,

---

[3] In fact, none of the allegations of the complaint suggests that Plaintiff suffered *any* harm as a result of the City's denial of her request for a transfer to the Natatorium. Even the change in Plaintiff's work hours to a later shift was a consequence of the City's *earlier* decision to transfer Plaintiff away from Williams due to that facility's impending closure. (See Doc. 27 ¶ 33-34). Plaintiff includes no allegations suggesting that she would have been assigned a more desirable shift if she had instead been transferred to the Natatorium, as she later claims she requested.

Plaintiff cannot state a retaliation claim premised on that transfer. See Smith, 565 F. App'x at 778 ("Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . . This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or action of the employer.") (quoting Nassar, 570 U.S. at 360).

Plaintiff also cannot show that the City's decision to deny her subsequent request to be transferred to the Natatorium constituted retaliation under Title VII. Plaintiff alleges a single basis for inferring the City's "retaliatory motive"— a comment that Plaintiff's "'past' with the 'boys' currently working at the Natatorium" played a role in the decision to deny her transfer request. (Doc. 27 ¶ 62). However, Plaintiff also acknowledges that she was arrested for allegedly threatening a male employee at the Natatorium on or before March 2012. (Id. ¶ 30). Thus, the allegations of the complaint themselves establish that Plaintiff's alleged threats to a Natatorium employee played at least some role in the City's alleged reason for denying the transfer. Consequently, Plaintiff's retaliation claim fails because she cannot show that any retaliatory animus was the sole, "but-for" cause of the City's decision to deny this transfer request. See Smith, 565 Fed. Appx. at 778 (citing Nassar, 570 U.S. at 360).

In short, Plaintiff has failed to plausibly allege either that she suffered an adverse employment action or that any such action was causally related to any

protected activity. Plaintiff's claim concerning pre-Charge retaliation by the City

must therefore be dismissed.

> ii.   *Plaintiff Has Failed to Exhaust Her Administrative Remedies as to Any Claims of Post-Charge Retaliation, and She Also Has Not Alleged a Causal Connection Between the Alleged Post-Charge Retaliation and Any Protected Conduct on Her Part*

Plaintiff also alleges in her complaint that the City has retaliated against her

*since* the filing of her EEOC Charge of Discrimination. (Doc. 27 ¶¶ 48-49). However,

Plaintiff does not allege that she ever raised these allegations of post-Charge

retaliation to the EEOC by the filing of a successive charge of discrimination. The

law is clear that "[b]efore filing suit under Title VII[] . . . a plaintiff must exhaust the

available administrative remedies by filing a charge with the EEOC." Anderson v.

Embarq/Sprint, 379 Fed. Appx. 924, 926 (11th Cir. 2010) (citations omitted).

> The purpose of the exhaustion requirement is to allow the EEOC the first opportunity to investigate the alleged practices and to perform its role "in obtaining voluntary compliance and promoting conciliation efforts." ***We have cautioned "that allegations of new acts of discrimination are inappropriate" for a post-charge judicial complaint.*** Consequently, "a plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."

Duble v. FedEx Ground Package Sys., Inc., 572 Fed. Appx. 889, 892 (11th Cir. 2014)

(internal citations omitted) (emphasis supplied).

14

As an exception to this general rule, a plaintiff need not exhaust administrative remedies where a judicial claim of retaliation "grows out of an administrative charge *that is properly before the court*." See id. (quoting <u>Baker v. Buckeye Cellulose Corp.</u>, 856 F.2d 167, 169 (11th Cir. 1988)) (emphasis supplied). "This exception, however, does not apply, when no other properly raised *judicial* claim exists to which the retaliation claim may attach." Id. at 892-93 (emphasis supplied). In other words, the <u>Baker</u> exception to the exhaustion requirement for retaliatory acts *only* applies to retaliatory acts that occur *after the filing of a lawsuit concerning the original EEOC charge*. See id.; see also, e.g., <u>Jones v. Heritage-Crystal-Clean</u>, LLC, 2016 WL 3406514, at *3 (M.D. Fla. June 21, 2016) (dismissing retaliation claim concerning termination after the EEOC charge was filed, but before the lawsuit concerning that charge was before the court); <u>Robinson v. Koch Foods of Ala.</u>, 2014 WL 4472611, at *2 (M.D. Ala. Sept. 11, 2014) (same). Otherwise, if any post-charge retaliatory conduct occurs *before* the lawsuit is itself filed, the plaintiff is still required to exhaust her administrative remedies before premising a Title VII action on that conduct. See <u>Duble</u>, 572 Fed. Appx. at 892 (citations omitted).

Here, Plaintiff cursorily asserts that the City has retaliated against her in several ways since Plaintiff filed the Charge of Discrimination underlying this action. (Doc. 27 ¶¶ 48-49). Even assuming this assertion were plausibly supported by sufficient

15

factual allegations, there is no indication that Plaintiff timely exhausted her administrative remedies as to these acts, either by amending her original Charge or by filing a new one. Nor do the allegations of the complaint establish that the purported retaliatory acts occurred after the filing of her original judicial complaint with this Court. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)) (holding that a complaint raising only "a sheer possibility" of liability "stops short" of demonstrating entitlement to relief). Therefore, to the extent that Plaintiff's Title VII retaliation claim is premised on such post-Charge conduct, those claims are due to be dismissed. See Duble, 572 Fed. Appx. at 893.

Even if those claims were properly exhausted, Plaintiff's allegations also fail to establish any causal connection between the City's alleged post-Charge conduct and any protected activity. Plaintiff here includes no allegations to plausibly suggest that the allegedly retaliatory acts were actually based upon her earlier protected activity. Instead, she summarily concludes that the acts were based upon her protected activity, without actually demonstrating any such connection. The only possible basis Plaintiff may claim for tying together the allegedly retaliatory acts and her earlier protected activity might be temporal proximity. However, where a plaintiff attempts to satisfy the causal link element of a retaliation claim by relying *solely* on the

16

temporal proximity between the statutorily protected activity and the retaliatory conduct, the Eleventh Circuit has provided the following limitation:

> The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action. But mere temporal proximity, without more, must be "very close." A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough.

Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir.2007) (internal citations omitted).

Here, Plaintiff has alleged that the City took certain actions against her *at some undefined point* after she filed her Charge, but has failed to actually set out any persuasive timeline indicative of a close temporal proximity between her protected activity in March 2017 and any subsequent actions on the part of the City. (Doc. 27 ¶ 49). Indeed, Plaintiff has wholly failed to state when the City's post-Charge retaliatory activity took place, other than to make clear that it was prior to the filing of the complaint in 2018. Accordingly, Plaintiff has failed to "plead[] factual content that allows the court to draw the reasonable inference" that this conduct was causally connected to the filing of her Charge, or to any other protected activity. See Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). In the absence of any further allegations "rais[ing] a right to relief above the speculative level," see Twombly, 550

U.S. at 555, Plaintiff's claim of post-Charge retaliation must be dismissed for this reason as well.

### C.   The Denial of Plaintiff's Transfer Request Does Not Amount to Denial of a Reasonable Accommodation Under the ADA

Plaintiff also includes an (impermissibly consolidated) count alleging that the City discriminated against her in violation of the Americans with Disabilities Act and the Rehabilitation Act.  (Doc. 27, at Count III). To state a discrimination claim under either the ADA or the Rehabilitation Act, a plaintiff must allege, *inter alia*, that she was discriminated against because of a disability. See, e.g., Cash v. Smith, 231 F.3d 1301, 1305 (11th Cir. 2000). Discrimination may include an employer's failure to make reasonable accommodations for a disability. See 42 U.S.C. § 12112(b)(5)(A).

Here, the *sole* basis for Plaintiff's consolidated ADA and Rehabilitation Act discrimination claim in Count III is her allegation that the City denied her request to be transferred to a different facility so that she would not have to work with another employee. (See Doc. 27 ¶ 72). However, as courts in this Circuit and beyond have repeatedly recognized, "transferring disabled individuals solely to allow the employee to work in a different setting or under a different supervisor is not an accommodation reasonably to be expected." Anderson v. Bellsouth Telecomms., LLC, No. 2:12-cv-3537-RDP, 2015 WL 461698, at *10 n.13 (N.D. Ala. Feb. 4, 2015) (multiple

citations omitted); see also, e.g., Santandreau v. Miami-Dade County, 2011 WL 13136161, at *11 (S.D. Fla. Aug. 1, 2011) (citing Gaul v. Lucent Techs., Inc., 134 F.3d 576, 581 (3d Cir. 1998)) ("A transfer from an incompatible supervisor is not a 'reasonable accommodation.'").[4] A holding to the contrary "would give disabled employees preferential treatment over nondisabled persons[] with regard to access to transfers," which is not a requirement of the ADA. See Anderson, 2015 WL 461698, at *10 n.13 (citation omitted). Because the City was not required to honor Plaintiff's request for a transfer to another facility as a reasonable accommodation for her

---

[4] See also, e.g., Coulson v. The Goodyear Tire & Rubber Co., 31 Fed. Appx. 851, 858 (6th Cir. 2002) ("Coulson is seeking to force Goodyear to transfer him so that he will not be required to work with certain people. As the magistrate judge noted, this would be asking the court to establish the conditions of his employment, most notably with whom he will work. Courts are not meant to act as a super-bureau of Human Resources. Since Coulson's proposed accommodation was unreasonable, grant of summary judgment was appropriate.") (citations omitted); Gaul v. Lucent Techs., Inc., 134 F.3d 576, 581 (3d Cir. 1998) ("[B]y asking to be transferred away from individuals who cause him prolonged and inordinate stress, Gaul is essentially asking this court to establish the conditions of his employment, most notably, with whom he will work. However, nothing in the ADA allows this shift in responsibility.") (citations omitted); Weiler v. Household Fin. Corp., 101 F.3d 519, 526 (7th Cir. 1996) ("Weiler's solution is that she return to work under a different supervisor. But that decision remains with the employer. In essence, Weiler asks us to allow her to establish the conditions of her employment, most notably, who will supervise her. Nothing in the ADA allows this shift in responsibility."), reaffirmed in Bradford v. City of Chicago, 121 Fed. Appx. 137, 140 (7th Cir. 2005); Wernick v. Fed. Reserve Bank of N.Y., 91 F.3d 379, 384 (2d Cir. 1996) (rejecting proposed accommodation of working under a different supervisor because "nothing in the law leads us to conclude that in enacting the disability acts, Congress intended to interfere with personnel decisions within an organizational hierarchy"); Scott v. Kaneland Cmty. Unit Sch. Dist. No. 302, 898 F. Supp. 2d 1001, 1008 (N.D. Ill. 2012) ("Scott was not entitled to demand a new supervisor under the ADA or the Rehabilitation Act, and Scott has failed to point to sufficient evidence to show that Defendants failed to provide him with a reasonable accommodation when they declined to move Scott to a position with a different supervisor.").

disability, she has no viable disability discrimination claim under the ADA or the Rehabilitation Act. Count III is therefore due to be dismissed in full.

### D.   Plaintiff Fails to State an FMLA Interference Claim

To establish an FMLA interference claim, a plaintiff "must demonstrate that [s]he was ***denied*** a benefit to which [s]he was entitled under the FMLA." Martin v. Brevard Cnty. Pub. Schs., 543 F.3d 1261, 1266-67 (11th Cir. 2008) (emphasis supplied). In particular, an employee may assert an FMLA interference claim premised on the employee's failure to restore her "to the position of employment held by [her] when the leave commenced" or to an equivalent position. See id. at 1267 (citing 29 U.S.C. § 2614[(a)](1)(A) & (B)). However, to state a proper FMLA interference claim of any sort, a plaintiff must demonstrate (among other things) that she suffered actual prejudice as a result of the employer's conduct. See, e.g., Demers v. Adams Homes of Nw. Fla., Inc., 321 Fed. Appx. 847, 849 (11th Cir. 2009) *(per curiam)* (citing Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002)).

In this case, Plaintiff contends that the City "interfered with the exercise of [her] right to job restoration" under 29 U.S.C. § 2614(a) and § 2615(a)(2). (Doc. 27 ¶¶ 84-85). However, Plaintiff not only fails to allege facts showing that the City refused to restore her to the position she held with the City's Parks and Recreation Department before her FMLA leave began, she actually *concedes* that she was

restored to that position upon the expiration of her leave. (Doc. 27 ¶¶ 13, 47, 84). Because Plaintiff has alleged no facts showing that the City failed to restore her "to the position of employment held by [her] **_when the leave commenced_**," 29 U.S.C. § 2614(a)(1)(A) (emphasis supplied), she has failed to state an FMLA interference claim premised on the denial of job restoration. Cf., e.g., Seguin v. Marion Cnty. Health Dep't, 2014 WL 3955162, at *11 (M.D. Fla. Aug. 13, 2014) (no FMLA interference claim where immediate supervisor denied plaintiff's FMLA leave request, when that denial was quickly reversed by higher-level supervisor and plaintiff never suffered any actual denial of rights).

    Nor has Plaintiff alleged that any other conduct by the City has prejudiced her FMLA rights. See Demers, 321 Fed. Appx. at 849 (affirming summary judgment on interference claim where plaintiff did not "articulate any harm suffered" from employer's conduct). Although Plaintiff contends that a supervisor was "instructed" to counsel her as to the use of personal or sick leave and was "instructed" to threaten her with termination (Doc. 27 ¶ 49), Plaintiff does not allege that the City ever denied her leave or coerced her into not taking any FMLA leave. See, e.g., Seguin, 2014 WL 3955162, at *11 (dismissing FMLA interference claim where plaintiff failed to show that employer "coerced her into refraining from submitting a leave request or that she was denied leave on the basis of" employer's comments and inquiries); Juback v.

21

Michaels Stores, Inc., 2014 WL 3720540, at *3 (M.D. Fla. July 24, 2014) (dismissing FMLA interference claim where plaintiff failed to allege that he was prejudiced by employer conduct). In fact, an employer's "occasional inquiry" into an employee's FMLA leave, such as by requesting paperwork or by "counseling" an employee on when such leave is allowed, is entirely proper. See, e.g., Seguin, 2014 WL 3955162, at *11. Since Plaintiff has not alleged sufficient facts to show that she was denied "job restoration" or otherwise suffered actual prejudice to the exercise of her rights under the FMLA, her interference claim in Count IV of the First Amended Complaint must be dismissed.

### E.    Plaintiff Is Not Entitled to Front Pay or Back Pay

Although the entire complaint in this case is due to be dismissed for the above-stated reasons, it is also worth noting that Plaintiff inappropriately seeks relief to which she is not entitled. With respect to each of Counts I through III, Plaintiff demands an award of both back pay and front pay. (Doc. 27 ¶¶ 56, 58(D), 66, 67(D), 76(D)). Back pay is an equitable remedy "intended to make the claimant whole, not to confer a windfall." Richardson v. Tricom Pictures & Productions, Inc., 334 F. Supp. 2d 1303, 1310 (S.D. Fla. 2004) (quotation omitted). In calculating back pay, "the trial court must determine what the employee would have earned had she not been the victim of discrimination, and must subtract from this figure the amount of

actual interim earnings." See id. Likewise, front pay is also an equitable remedy "awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 846 (2001). Front pay is generally only awarded where reinstatement is ineffective as a remedy. See, e.g., Armstrong v. Charlotte Cnty. Bd. of Cnty. Comm'rs, 273 F. Supp. 2d 1312, 1315 (M.D. Fla. 2003).

Here, Plaintiff has not alleged that she lost *any* earnings as a result of any purported discrimination, retaliation, or failure to reasonably accommodate her disability. By all indications, Plaintiff suffered no loss of any compensation during the events underlying this lawsuit; rather, Plaintiff was simply transferred to a different facility and permitted to take leave, after which she resumed her same position at the new facility when she returned to work, with no suggestion of any loss of hours worked or overall pay. (See Doc. 27 ¶ 47). Even to the extent that Plaintiff suggests that she was briefly "terminated," the allegations of the First Amended Complaint make clear that the alleged termination occurred while she was on FMLA leave and that her termination was immediately "reversed" that same day, with no loss of wages or employment whatsoever. (See id. ¶¶ 43-46). Accordingly, there is no basis for Plaintiff to seek an award of either front pay or back pay. See, e.g., Nance v. Maxwell Fed. Credit Union, 186 F.3d 1338, 1341-42 (11th Cir. 1999) (finding "no

rational basis on which to conclude that [the plaintiff] is entitled to back pay and front pay" where her employer "never terminated [her] or in any way altered her terms and conditions of employment"); see also Slaughter-Payne v. Shinseki, 2011 WL 13141500, at *2 (D. Ariz. June 9, 2011) (finding it "unclear how front and back pay are at issue" where "Plaintiff was never terminated and remains an employee" of her employer); Key v. Bender Shipbuilding & Repair Co., 2000 WL 1005840, at *3 (S.D. Ala. July 10, 2000) (denying request for back pay where plaintiff was transferred to new position, but his "salary and benefits were undisputedly not altered or in any way diminished" and he "continued to earn the same pay and benefits after the transfer that he earned before the transfer").

Therefore, to the extent that Plaintiff seeks back pay or front pay as to any of her claims, such requests for relief are due to be dismissed.

## III.   Conclusion

For the foregoing reasons, Plaintiff's First Amended Complaint is due to be dismissed for failure to state a claim upon which relief may be granted.

s/ David J. Canupp
David J. Canupp

s/ J. Bradley Emmons
J. Bradley Emmons

24

LANIER FORD SHAVER & PAYNE, P.C.
P. O. Box 2087
2101 West Clinton Avenue,  Suite 102 (35805)
Huntsville, AL 35804
Phone: 256-535-1100 / Fax: 256-533-9322
E-mail: djc@lfsp.com & jbe@lfsp.com

Attorneys for Defendant City of Huntsville, Alabama

CERTIFICATE OF SERVICE

      I certify that I have filed the foregoing with the Clerk of the Court using the ECF System, which will send notification of such filing to those parties of record who are registered for electronic filing, and further certify that those parties of record who are not registered for electronic filing have been served by mail by depositing a copy of the same in the United States mail, first class postage prepaid and properly addressed to them as follows:

        Rebekah Keith McKinney
        Philip D. DeFatta
        WATSON MCKINNEY LLP
        200 Clinton Avenue, West Suite 110
        Huntsville, AL 35801
        Phone: 256-536-7423
        Fax: 256-536-2689
        Email: mckinney@watsonmckinney.com

on this the 3rd day of January, 2019.

                                     s/ David J. Canupp
                                     David J. Canupp