## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **STEPHANIE M. RONEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.:** |
| | ) | **5:18-cv-1482-CLS** |
| **CITY OF HUNTSVILLE, ALABAMA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

## PLAINTIFF'S OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS

_____

Rebekah Keith McKinney (ASB-3137-T64J)
Philip M. DeFatta (ASB-9307-R74F)
*Attorney for Plaintiff*
Watson McKinney, LLP
200 Clinton Avenue, West, Suite 110
Huntsville, Alabama 35801
(256) 536-7423 telephone
mckinney@watsonmckinney.com
defatta@watsonmckinney.com


Attorneys for Plaintiffs

**TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................1

II.    SUMMARY OF FACTS ALLEGED IN THE FIRST AMENDED COMPLAINT ........................................................1

III.   STANDARD OF REVIEW ........................................4

IV.   ARGUMENT ........................................................5

    A.   THE CITY'S MOTION TO DISMISS IS DUE TO BE DENIED BECAUSE PLAINTIFF ALLEGED A PLAUSIBLE TITLE VII SEX DISCRIMINATION CLAIM ........................................5

        1.   Plaintiff alleged that she suffered a tangible adverse employment action after being transferred to the Showers Center ................6

        2.   Plaintiff alleged that her transfer to the Showers Center put her in an objectively hostile work environment ...........................10

    B.   THE CITY'S MOTION TO DISMISS IS DUE TO BE DENIED BECAUSE PLAINTIFF ALLEGED PLAUSIBLE TITLE VII RETALIATION CLAIMS ................................................13

        1.   The City transferred Plaintiff to the Showers Center in retaliation for her past complaints about sexual and racial harassment.....13

        2.   The City retaliated against Plaintiff for filing a charge of discrimination with the EEOC and she exhausted her administrative remedies ........................................15

    C.   THE CITY'S MOTION TO DISMISS PLAINTIFF'S DISABILITY DISCRIMINATION CLAIMS IS DUE TO BE DENIED BECAUSE DENIAL OF HER REQUEST NOT TO BE TRANSFERRED TO THE SHOWERS CENTER WAS A FAILURE TO PROVIDE REASONABLE ACCOMMODATION ........................................18

D.      THE CITY'S MOTION TO DISMISS PLAINTIFF'S FMLA INTERFERENCE CLAIM IS DUE TO BE DENIED BECAUSE SHE ALLEGED PREJUDICE ................................................................20

E.      PLAINTIFF IS ENTITLED TO BACK PAY ...................................21

# I.    INTRODUCTION

Defendant, the City of Huntsville, Alabama (the "City"), seeks to dismiss the claims asserted by Plaintiff, Stephanie M. Roney, in her First Amended Complaint (doc. 27). (*See* docs. 28-29). Specifically, the City contends that Plaintiff's discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and the Americans with Disabilities Act (the "ADA") (Counts I through III), and interference with benefits under the Family and Medical Leave Act ("FMLA") (Count III) claims are due to be dismissed pursuant to Rule 12(b)(6), *Federal Rules of Civil Procedure* (2018), for failure to state a claim upon which relief can be granted. The City also argues that Plaintiff is not entitled to front or back pay.

As detailed below, the City's Motion is due to be denied. Plaintiff pleads factual allegations sufficient to support the claims asserted in the First Amended Complaint. And she is entitled to back pay.

# II.    SUMMARY OF FACTS ALLEGED IN THE FIRST AMENDED COMPLAINT

The City first employed Plaintiff on May 4, 2004, as a lifeguard at the Brahan Springs Natatorium (the "Natatorium"). (Doc. 27 at ¶ 12). Plaintiff is still employed by the City in its Parks and Recreation Department at the Richard Showers Center pool (the "Showers Center"). (*Id.* at ¶ 13). In 2005, while still assigned to work at the Natatorium, Plaintiff worked with Mick Roney (no relation), and four other male

employees—Mark Deal ("Deal"), C.J. Vankampen ("Vankampen"), Kim Putman ("Putnam"), and Pat McCool ("McCool")—who subjected her to sexual and racial harassment. (*Id.* at ¶¶ 15-18). Plaintiff did not pursue litigation related to this harassment. (*Id.* at ¶ 19). However, she did report the conduct to her supervisor. (*Id.*).

In January, 2012, Plaintiff was diagnosed with Post-Traumatic Stress Disorder ("PTSD") after she was robbed, assaulted, and held hostage in an incident unrelated to her employment. (*Id.* at ¶¶ 20-21). Plaintiff's PTSD caused her to miss several days of work, and she continues to seek treatment for the condition. (*Id.* at ¶ 21). When Plaintiff returned to work on January 29, 2012, two of Plaintiff's male co-workers published sexually and racially charged insults directed at Plaintiff on a whiteboard. (*Id.* at ¶¶ 22-23). Plaintiff reported the whiteboard incident to Mick Roney, and his supervisor, Jerry Shelton. (*Id.* at ¶ 25). The whiteboard was removed. (*Id.*). However, rather than discipline the male co-workers responsible for writing and posting the whiteboard, Steve Ivey ("Ivey"), the Director of the Parks and Recreation Department, involuntarily transferred Plaintiff to the Williams Aquatic Center. (*Id.* at ¶¶ 28-29). After Plaintiff's transfer to the Williams Aquatic Center, she continued to experience problems at work, including a male coworker swearing a warrant against her on March 23, 2012 (*id.* at ¶ 30), and learning that Putnam called Plaintiff's son, who is bi-racial with an African-American father, a "monkey." (*Id.* at ¶¶ 17, 31).

Plaintiff continued working at the Williams Aquatic Center until November 4, 2016, when she was informed by Ivey that she was being transferred to the Showers Center. (*Id.* at ¶ 32). Ivey also reassigned Plaintiff from working day shifts only to working both day and night shifts. (*Id.*). The City planned to close the Williams Aquatic Center five months from the date of Plaintiff's transfer; however, the closure actually took one year. (*Id.* at ¶ 33). Plaintiff, therefore, requested to remain at the Williams Aquatic Center or be transferred to the Natatorium. (*Id.* at ¶¶ 34-37). Ivey refused Plaintiff's request even though other qualified male employees agreed to transfer to the Showers Center in Plaintiff's place. Moreover, Ivey did not require the other employees at the Williams Aquatic Center to transfer before its closure. (*Id.* at ¶¶ 36-38).

Plaintiff opposed the transfer because she would be forced to work with Mick Roney, who previously subjected her to sexual and racial harassment. (*Id.* at ¶¶ 14-18, 35). Additionally, the shift change presented a substantial financial and personal hardship for Plaintiff and her family. (*Id.* at ¶ 34). Despite these reasons for opposing the transfer, Ivey refused Plaintiff's requests. Ivey told Plaintiff that he transferred Plaintiff, "due to her 'past' with the 'boys' currently working at the Natatorium." (*Id.* at ¶ 38). Plaintiff suffered adverse physical and emotional impacts as a result of her transfer to the Showers Center. (*See id.* at ¶¶ 39-42). Plaintiff also suffered profession setbacks, as she was terminated (*id.* at ¶ 43), reinstated after pleading with

human resources (*id.* at ¶¶ 45-46), denied FMLA benefits and forced to use personal leave (*id*. at ¶¶ 44, 49), and was still required to work with Mick Roney. (*Id.* at ¶¶ 47, 49).

Plaintiff filed her charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 27, 2017, alleging continuing discrimination and retaliation on the basis of her sex (female) and disability (PTSD) in violation of Title VII, the ADA, the Rehabilitation Act, and FMLA interference. (*Id.* at ¶ 9, Ex. 1 pp. 1-2). Plaintiff initiated the present action on September 11, 2018 (doc. 1), and filed her First Amended Complaint (doc. 27) on December 12, 2018.

## III.   STANDARD OF REVIEW

A pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, in order to withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must "plead enough facts to state a claim to relief that is plausible on its face." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347–48 (11th Cir. 2016) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

When evaluating a motion brought under Rule 12(b)(6), the court accepts "the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016).

However, "[t]o survive a motion to dismiss, a complaint must . . . 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, 129 (*quoting Twombly*, 550 U.S. at 570). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In other words, the complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id*.; *see also Twombly*, 550 U.S. at 555, (emphasizing that "[f]actual allegations [included in the complaint] must be enough to raise a right to relief above the speculative level").

## IV. ARGUMENT

### A. THE CITY'S MOTION TO DISMISS IS DUE TO BE DENIED BECAUSE PLAINTIFF ALLEGED A PLAUSIBLE TITLE VII SEX DISCRIMINATION CLAIM.

An employment decision, such as termination, failure to hire, or demotion, must meet a "threshold level of substantiality" to constitute an "adverse employment action." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1238-39 (11th Cir. 2001) (quotation marks omitted). Employment actions are sufficiently adverse for purposes of Title VII liability where an employee proves, from the perspective of a reasonable person in similar circumstances, "a serious and material change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001). This theory of liability "evinces a congressional

intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment,' which includes [employers] requiring people to work in a discriminatorily hostile or abusive environment." *National R.R. Passenger Corp.*, 536 U.S. at 116 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (some internal quotation marks omitted) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986), in turn quoting *Los Angeles Dept. of Water and Power v. Manhart*, 435 U.S. 702, 707, n. 13, (1978)).

A plaintiff, therefore, pleads a plausible Title VII sex discrimination claim "(1) 'through [allegations of] tangible [adverse] employment action' or (2) 'through [allegations] of a hostile work environment caused by sexual harassment that is sufficiently severe or pervasive to alter the terms and conditions of the work.'" *Osburn v. Hagel*, 46 F. Supp. 3d 1235, 1241 (M.D. Ala. 2014) (quoting *Nurse "BE" v. Columbia Palms W. Hosp., Ltd. P'ship*, 490 F.3d 1302, 1308 (11th Cir.2007)). Plaintiff alleged facts satisfying both of these categories, although the City only argues that Plaintiff failed to plead a tangible adverse employment action. (*See* doc. 29 at pp. 5-8).

1.  Plaintiff alleged that she suffered a tangible adverse employment action after being transferred to the Showers Center.

Transfers are typically adverse when they are "objectively equivalent, at least to some degree, to demotions." *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1450 (11th Cir. 1998)). However, applicable precedent does not "stand for the

proposition that a court may not ever consider a plaintiff's subjective preferences in determining whether h[er] transfer [wa]s 'purely lateral.'" *Id.* at 1450; *see also id.*, n. 15. For example, other circuits, relying on the purpose and intent of Title VII, have held that lateral transfers can constitute adverse employment actions. *See e.g.*, *Ortiz-Diaz v. U.S. Dept. of Housing and Urban Development*, 867 F.3d 70 (D.C. Cir. 2017); *see also Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986) (explaining that Congress intended Title VII to prohibit all types of discriminatory treatment and not just those that have an economic or tangible impact)).

In *Ortiz-Diaz*, the plaintiff sued his employer for Title VII race discrimination and retaliation after his lateral transfer request was denied. 867 F.3d at 72-73. The plaintiff wanted to be transferred away from his racially biased supervisor and alleged that the denial would have an "adverse impact on the [his] potential for career advancement," along with other impacts like separation from his family. *Id.* at 72. The *Ortiz-Diaz* court, in reversing the district court's grant of summary judgment, held that the defendant's denial of the plaintiff's transfer request "away from a racially and ethnically biased supervisor to a non-biased supervisor more likely to advance his career" was actionable under Title VII. *Id.* at 74.[1] The *Ortiz-Diaz* court

---

[1] The *Ortiz-Diaz* court relied in part on *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999), where it held that, although the denial of a lateral transfer did not constitute a materially adverse action, a showing of "consequences affecting . . . future employment opportunities" could be sufficient. 867 F.3d at 74. The *Ortiz-Diaz* court further recognized that its conclusion was in agreement with the First, Second, and Seventh Circuits. *See id.*

also took issue with the defendant's attempts at "minimize[ing] the legal significance of [the plaintiff's] claimed injury, explaining that, "the plaintiff's legally protected interest in avoiding a racially and ethnically biased supervisor is more weighty than a 'personal preference[ ].'" *Id.* at 75.

Eleventh Circuit precedent concerning lateral transfers supports the underlying rationale of the *Ortiz-Diaz* court. *See e.g.*, *Jefferson v. Sewon America, Inc.*, 891 F.3d 911, 920-21 (11th Cir. 2018) (quoting *Davis*, 245 F.3d at 1239). Particularly, in the context of a request to be transferred, (or, as here, not transferred), the Eleventh Circuit requires that a plaintiff "must establish that 'a reasonable person faced with a choice [between the positions] . . . would prefer [not to be[ ] transferred." *Jefferson*, 891 F.3d at 921 (quoting *Webb-Edwards v. Orange Cty. Sheriff's Office*, 525 F.3d 1013, 1032 (11th Cir. 2008). Thus, applying this inquiry, a reasonable person could prefer a transfer (or request not to be transferred), similar to *Ortiz-Diaz*, to avoid working with biased supervisors or co-workers. Thus, like in *Ortiz-Diaz*, the Eleventh Circuit should not preclude Title VII liability, especially at the motion to dismiss stage, where the plaintiff can prove that the transfer constitutes a "serious and material change in the terms, conditions, and privileges of [her] employment." *Id.* (quoting *Web-Edwards*, 525 F.3d at 1033).

In the present case, similar to the *Ortiz-Diaz* plaintiff, Plaintiff alleged that she did not want to be transferred to avoid working with a sexually and racially

abusive co-worker, Mick Roney. Plaintiff alleged that she informed her supervisor that not being transferred would mitigate her fears of working with Mick Roney, and that being transferred would cause her to suffer financial and personal hardships. (*Id.* at ¶¶ 34-35). Specifically, Plaintiff would be assigned to the night shift, forced to hire child care, and forced to take more time from her family. (*Id.*). Plaintiff also alleged that other qualified male employees volunteered to transfer to the Showers Center in her place. (*Id.* at ¶ 36).

Plaintiff further alleged that she suffered multiple harms after her request was denied: (1) her PTSD worsened (*id.* at ¶ 40); (2) she had to undergo medical treatment (*id.* at ¶ 42); (3) she was temporarily unable to return to work due to her condition (*id.* at ¶ 42); (4) she was terminated (*id.* ¶¶ 43-44); (5) she had to use personal leave after her FMLA application was denied; (6) she was still assigned to the Showers Center with Mick Roney after demonstrating that her PTSD worsened (*id.* at ¶ 47); and (7) she suffered retaliation after filing a charge of discrimination with the EEOC. (*Id.* at ¶¶ 48-49).

Here, like in *Ortiz-Diaz*, and in line with Eleventh Circuit precedent, the trier of fact could conclude that the denial of Plaintiff's request, for purposes of Title VII, constituted a material impact on her career opportunities and conditions of employment. For example, working with Mick Roney has already caused Plaintiff to miss work and threaten her prospects for advancement. Therefore, the City's

Motion to Dismiss Plaintiff's Title VII sex discrimination claim is due to be denied because her transfer to the Showers Center constituted an adverse employment action.

2.  <u>Plaintiff alleged that her transfer to the Showers Center put her in an objectively hostile work environment.</u>

Title VII protects employees from other harassing conduct not necessarily amounting to a "direct" or "tangible" adverse impact like terminations and demotions. *See National R.R. Passenger Corp.*, 536 U.S. at 116. For instance, "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Id.* (*quoting Harris*, 510 U.S., at 21 (citations omitted).

Unlike claims based on a tangible employment action, those involving a "hostile work environment" address acts "different in kind" whose "very nature involve[] repeated conduct," such as "'discriminatory intimidation, ridicule, and insult.'" *Gowski v. Peake*, 682 F.3d 1299, 1312-13 (11th Cir. 2012) (quoting *Nat'l R.R. Passenger Corp.*, 536 U.S. at 117)). To establish a plausible Title VII sex discrimination claim based on a hostile work environment:

> The plaintiff must show '(1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was

sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.'

*Reeves v. C.H. Robinson Worldwide, Inc*., 594 F.3d 798, 808 (11th Cir. 2010)

(quoting *Mendoza v. Borden, Inc*., 195 F.3d 1238, 1245 (11th Cir.1999) (en banc)

(citation omitted); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 743

(1998) (noting that hostile work environment claims "require . . . severe *or*

pervasive" conduct) (emphasis added)). Notably, the trier of fact can "consider

discrete acts as part of a hostile work environment claim." *Osburn*, 46 F. Supp. 3d

at 1313 (citing *Nat'l R.R. Passenger Corp*., 536 U.S. at 117 (a hostile work

environment claim depends on "a series of separate acts that collectively constitute

one 'unlawful employment practice.'") (internal citation omitted).

   In the present case, Plaintiff plead facts satisfying these elements. Plaintiff is

a female (doc. 27 at ¶ 6), who experienced gender based harassment throughout her

employment (*id.* at ¶¶ 15, 18, 22, 28, 35, 38). Most recently (within 180 days of

Plaintiff's charge of discrimination), the City perpetuated this sexually hostile work

environment by forcing Plaintiff to work with Mick Roney against her objections.

(*Id.* at ¶¶ 32, 34-39). Plaintiff did not welcome the past conduct of Mick Roney and

others (*id.* at ¶¶ 15, 25), and she objected to being transferred to work with him again.

(*Id.* at ¶¶ 34-37). Particularly, Plaintiff alleged that the City denied her request to

remain at the Williams Aquatic Center or be assigned to the Natatorium. (*Id.* at ¶¶ 15-18, 21-26, 38).

Plaintiff also alleged that the transfer constituted a severe and pervasive change to the terms and conditions of her employment. (*Id.* at ¶¶ 39-44). Plaintiff alleged that the transfer forced her to work with Mick Roney, who previously sexually harassed her at work. (*Id.* at ¶¶ 15, 18, 28). Plaintiff further alleged that, as a result of being forced to work with Mick Roney again, she underwent medical treatment for PTSD (*id.* at ¶¶ 40-42), requested medical leave (*id.* at ¶ 44), was terminated and reinstated (*id.* a ¶¶ 43, 45, 46), and filed a charge of discrimination with the EEOC. (*Id.* at ¶¶ 47-48). Plaintiff also contends that the City transferred her to the Showers Center despite the fact that she could remain in her current position at the Williams Aquatic Center (*id.* at ¶¶ 33, 37) and that *other male employees* were willing to be transferred in her place. (*Id.* at ¶ 36)

Thus, the City's Motion to Dismiss is due to be denied because Plaintiff's allegations—accepted as true for purposes of Fed. R. Civ. P. 12(b)(6)—would permit the trier of fact to conclude that she was subjected to unwelcome, gender based harassment that was objectively severe and pervasive.[2]

---

[2] In applying the "reasonable person" standard on a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the City is not entitled to a presumption, through bare and contradictory assertions, that the conduct of its employees was objectively reasonable.

**B.    THE CITY'S MOTION TO DISMISS IS DUE TO BE DENIED BECAUSE PLAINTIFF ALLEGED PLAUSIBLE TITLE VII RETALIATION CLAIMS.**

To establish a plausible Title VII retaliation claim, "a plaintiff must show: (1) that she engaged in an activity protected under Title VII; (2) she suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action." *Kidd v. Mando American Corp.*, 731 F.3d 1196, 1211 (citing *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1258 (11th Cir. 2012)). The City improperly contends that Plaintiff failed to plead that any pre-charge retaliatory conduct constituted an "adverse employment action" and that those actions are not "causally related" to her protected activity. (Doc. 29 at pp. 9-14). The City also wrongly contends that Plaintiff failed to exhaust her administrative remedies as to any post-charge activity. (*Id.* at pp. 14-18).

1. The City transferred Plaintiff to the Showers Center in retaliation for her past complaints about sexual and racial harassment.

In the context of a retaliation claim, "[a]n action is materially adverse if it 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Osburn*, 46 F. Supp. 3d at 1251 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). However, the "[materially adverse] standard is 'decidedly more relaxed' than the requirement for a" prima facie Title VII discrimination claim. *Id.* (quoting *Crawford v. Carroll*, 529 F.3d 961, 970–71 (11th Cir. 2008) (emphasis in original) (internal quotation marks omitted).

For example, in *Gowski*, the jury awarded the plaintiff physicians damages and injunctive relief, in part, on their Title VII retaliatory hostile work environment claim. The *Gowski* court, in denying the defendant's post-verdict motion for judgment as a matter of law, found that the plaintiffs proved a "workplace filled with intimidation and ridicule that was sufficiently severe and pervasive to alter" their working conditions. *Id.* at 1313.

As discussed *supra* at Paragraph (IV)(A), Plaintiff's transfer to the Showers Center was an adverse employment action and was casually connected to her protected activity (here, past complaints of sexual and racial harassment). Specifically, Plaintiff alleged that, although the Williams Aquatic Center was closing, she was transferred "due to her 'past' with the 'boys' . . . at the Natatorium." (*Id.* at ¶¶ 33, 38).[3] This transfer was not a business necessity, as other male employees, including those willing to take the transfer, were not placed at the Showers Center. (*Id.* at ¶ 36). Plaintiff further alleged that, due to the transfer, she suffered material, adverse impacts. (*See supra* at Paragraph (IV)(A)(1)-(2)). Plaintiff's arrest was also not a legitimate reason for the transfer, and the City cannot establish that arrest as a legitimate, non-discriminatory reason for its actions at the

---

[3] The City erroneously contends that "allegations of the Complaint make clear that the City decided to transfer Plaintiff" because the Williams Aquatic center was closing. (Doc. 29 at p. 12) (citing Doc. 27 at ¶ 33). Paragraph 33 of the Complaint does not contain any allegation that Plaintiff's transfer was due to this closing.

motion to dismiss stage. Notably, Plaintiff disputes the arrest was proper, and McCool only swore out a warrant to further harass Plaintiff after she confronted him about the whiteboard incident. (Doc. 1 at ¶¶ 24-30).

Thus, the City's motion to dismiss Plaintiff's pre-charge Title VII retaliation claims is due to be denied.

2. <u>The City retaliated against Plaintiff for filing a charge of discrimination with the EEOC and she exhausted her administrative remedies.</u>

Plaintiff alleged that she suffered further retaliation after filing a charge of discrimination with the EEOC. (Doc. 27 at ¶¶ 48-49, 63). Contrary to the City's assertions (doc. 29 at pp. 14-18), "post-charge retaliation claims are not jurisdictionally barred for failure to allege them in" the plaintiff's charge of discrimination. *Sprinkle v. City of Douglas, Ga.*, 621 F.Supp.2d 1327, 1351 (S.D. Ga. 2008) (citing *Baker v. Buckeye Cellulose Corp.* 856 F.2d 167, 168 (11th Cir. 1988)). A plaintiff's judicial retaliation claim is exempted from Title VII's exhaustion requirement if it grows "'out of an earlier charge,' because the 'the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court.'" *Duble v. FedEx Ground Package Sys., Inc.*, 572 Fed. Appx. 889, 892 (11th Cir. 2014) (quoting *Baker*, 856 F.2d at 169, in turn quoting *Gupta v. E. Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. Unit A Aug.1981)).

In *Duble*, the plaintiff filed a charge of discrimination on March 6, 2009, alleging disability retaliation and discrimination for the defendant's failure to accommodate his neurologic condition. *Duble*, 572 Fed. Appx. at 891. The plaintiff was terminated on November 19, 2009, and filed suit in September, 2011, alleging, in part, that the defendant terminated his employment for engaging in protected activities. *Id.* at 891-92. Before filing suit, the plaintiff did not amend his original charge of discrimination to add the termination-based retaliation claim, nor did he file a new charge alleging retaliatory discharge. *Id.* at 893. The *Duble* court held that the plaintiff "failed to exhaust his administrative remedies regarding his termination claims," by not "amend[ing] his EEOC charge or fil[ing] a new charge relating to his termination." *Id.*; *see also Smith v. Vestavia Hills Board of Education*, 218 F. Supp. 3d. 1285, 1295-96 (N.D. Ala. 2016) (denying the defendant's motion to dismiss where post-termination and post-charge "refusal to hire retaliation clearly could be found to 'grow out of'" [the] [p]laintiff's initial race discrimination, age discrimination, and retaliation EEOC charge").

Unlike the *Duble* plaintiff—whose termination claims were barred because he failed to amend his pending charge of discrimination in 2009 and filed suit nearly two years later—Plaintiff timely filed suit within ninety days of receiving her right to sue letter. Unlike *Duble*, Plaintiff was terminated and reinstated *before filing* her charge of discrimination. (Doc. 27 at ¶¶ 43, 45, 46, 48).

Plaintiff also alleged a causal connection between the City's post-charge retaliation and her protected conduct. Plaintiff alleged that the City's retaliation *after filing* her charge of discrimination, like the retaliation referenced in the original charge, only concerned the terms and conditions of her employment. (*See id.* at ¶¶ 48, 49). In other words, even after Plaintiff filed her charge of discrimination, the City continued to permit male employees to harass her by threatening termination of her employment, interfering with her attempts to utilize FMLA benefits, and disciplining her for attempting to utilize sick and personal leave. (*Id.* at ¶ 49). More specifically, Plaintiff alleged that she filed her charge of discrimination on March 27, 2017 (*id.* at ¶ 48), and "*since that time, in retaliation for her filing of the EEOC Charge*," she experienced continued retaliation. (*Id.*) (emphasis added).[4] Moreover, the City's human resources department, who Plaintiff had to contact to be reinstated, would have known about her March 27, 2017, charge of discrimination. Importantly, Plaintiff's charge of discrimination was filed only sixty-seven days after she was forced to report to the Showers Center. *C.f., Clark Cnty. School Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (finding that a three-and-a-half month passage of time

---

[4] The City's reliance on two unreported cases, where post-charge termination claims were barred for failure to exhaust administrative remedies, are not applicable to the present case. See Jones v. Heritage-Crystal-Clean, LLC, 2016 WL 3406514, at *3 (M.D. Fla. June 21, 2016; Robinson v. Koch Foods of Ala., 2014 WL 4472611, at *2 (M.D. Ala. Sept. 11, 2014). Unlike the present case, these cases involve post-charge termination (a "discrete discriminatory act") that occurred before the plaintiff filed suit.

between the protected activity and adverse action, without other evidence of causation, was too long for the purposes of establishing the causal link)).

Plaintiff did not fail to exhaust her administrative remedies. Thus, the City's motion to dismiss Plaintiff's post charge Title VII retaliation claims is due to be denied.

## C. THE CITY'S MOTION TO DISMISS PLAINTIFF'S DISABILITY DISCRIMINATION CLAIMS IS DUE TO BE DENIED BECAUSE DENIAL OF HER REQUEST NOT TO BE TRANSFERRED TO THE SHOWERS CENTER WAS A FAILURE TO PROVIDE REASONABLE ACCOMMODATION.

The reasonableness of a denied accommodation is generally a fact question inappropriate to be decided on a Fed. R. Civ. P. 12(b)(6) motion to dismiss. *See e.g.*, *Daughtry v. Army Fleet Support, LLC*, 925 F. Supp. 2d 1277, 1284 (M.D. Ala. 2013) (citing *Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1124, 1125 (10th Cir. 1995).

In *Daughtry*, the plaintiff had an injured shoulder and alleged that the defendant employer failed to accommodate his employment as an aircraft mechanic. *Id.* at 1280-81. Particularly, the plaintiff argued, in part, that the defendant employer violated its internal policies in searching for alternative accommodations. *Id.* at 1283-84. In granting the defendant's motion for summary judgment, the *Daughtry* court held that the "reasonable accommodation" element required that the plaintiff "show that there was an actual, not just hypothetical, reasonable accommodation that could have been taken." *Id.* at 1283 (citing *Milton*, 53 F.3d at 1125).

In the present case, Plaintiff alleged that she requested *not to be transferred* to a position that would force her to work with Mick Roney and would (and did) exacerbate her PTSD. (Doc. 27 at ¶¶ 34-38). Moreover, she alleged that, if the City granted her request, she would simply remain in her current position and that other equally qualified male employees (who were willing to transfer) would take her place. (*Id.* at ¶ 36). Thus, unlike *Daughtry*, Plaintiff pleaded the existence of an actual, reasonable accommodation, that could have been taken. The trier of fact, taking Plaintiff's allegations as true, could conclude that the City's actions constituted denial of a reasonable accommodation—i.e., Plaintiff could remain at the Williams Aquatic Center, like the other non-transferred male employees, and she would be able to avoid working with Mick Roney.

The City's bare and contradictory assertion that Plaintiff failed to plead a reasonable accommodation—i.e., because the ADA does not always require an employer to transfer employees upon request, it cannot possibly be a reasonable accommodation—is not sufficient to dismiss Plaintiff's ADA and Rehabilitation claims under Fed. R. Civ. P. 12(b)(6). (*See* doc. 29 at pp.18-20). The authorities relied on by the City, which primarily were decided at the summary judgment stage, are not applicable here. Plaintiff's request was to avoid working in a position that would force her to work with Mick Roney, who sexually and racially harassed her in the past, rather than merely being dissatisfied or socially "incompatible" with a

supervisor. *See e.g., Santandreau v. Miami-Dade County*, 2011 WL 13136161, at *11 (S.D. Fla. Aug. 1, 2011) (citing *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 581 (3d Cir. 1998)).

Thus, the City's motion to dismiss Plaintiff's ADA and Rehabilitation claims is due to be denied.

## D. THE CITY'S MOTION TO DISMISS PLAINTIFF'S FMLA INTERFERENCE CLAIM IS DUE TO BE DENIED BECAUSE SHE ALLEGED PREJUDICE.

A plausible FMLA interference claim has two parts. First, a plaintiff "need only demonstrate by a preponderance of the evidence that [s]he was entitled to the benefit denied." *Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1293-94 (11th Cir. 2006) (quoting *Strickland v. Water Works and Sewer Bd. of the City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001) (internal citations omitted). Second, a plaintiff must also establish that that she was "prejudiced by the [FMLA] violation in some way." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002). However, proof "that h[er] employer intended to deny the [FMLA] benefit" is not required. To satisfy the prejudice prong, a plaintiff must "demonstrate some harm remediable by either 'damages' or 'equitable relief.'" *Evans v. Books-A-Million Evans*, 762 F.3d 1288, 1295 (internal citations omitted).

Plaintiff alleged that she applied for FMLA leave. (Doc. 27 at ¶ 44). She further alleged that she was terminated approximately one month after submitting he

application. (*Id.* at ¶¶ 42-44). Although Plaintiff was ultimately reinstated (*id.* at ¶ 45-46), she further alleged that when she attempted to utilize sick and personal leave after filing her charge of discrimination, the City continued to threaten termination of her employment and make the process more difficult. (*Id.* at ¶ 48-49). Taken as true, the trier of fact could infer that a reasonable person in Plaintiff's position would forgo additional attempts to seek FMLA benefits.

The City improperly contends that Plaintiff's FMLA interference claim fails for two reasons. (*See* doc. 29 at pp. 20-22). Specifically, the City contends that Plaintiff failed to allege: (1) facts showing that the City failed to restore her to the position she held when the leave commenced (Doc. 29 at p. 21); and/or (2) that her FMLA rights were prejudiced by any other conduct by the City. (*Id.*). However, Plaintiff's FMLA interference claim does not rely on whether or not she was actually restored to her prior position. Instead, Plaintiff alleged that the City continues to threaten termination of her employment if she takes any leave. (Doc. 27 at ¶¶ 48-49). Plaintiff also alleged prejudice from the City's continuing actions: she cannot take leave, or even apply for FMLA benefits, out of fear that she will be terminated again.

Thus, the City's motion to dismiss Plaintiff's FMLA interference claim is due to be denied.

### E. PLAINTIFF IS ENTITLED TO BACK PAY.

Plaintiff is entitled to backpay from the time she was informed about being transferred to the Showers Center and forced to take leave on or about November 18, 2016. (Doc. 27 at ¶¶ 40, 41). Plaintiff was subsequently terminated and reinstated on or about January 3, 2017, and she reported to work at on January 19, 2017. (*Id.* at ¶¶ 45-48). The City's motion to dismiss Plaintiff's backpay claims is due to be denied.[5]

Respectfully submitted this the 25th day of January, 2019.

/s/ Rebekah Keith McKinney
Rebekah Keith McKinney (ASB-3137-T64J)
Philip M. DeFatta (ASB-9307-R74F)
*Attorney for Plaintiff*
Watson McKinney, LLP
200 Clinton Avenue, West, Suite 110
Huntsville, Alabama 35801
(256) 536-7423 telephone
mckinney@watsonmckinney.com
defatta@watsonmckinney.com

---

[5] Plaintiff is not seeking front pay at this time.

**CERTIFICATE OF SERVICE**

   I hereby certify that on this the 25th day of January, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and have served a copy of same upon the following by electronic service or by placing a copy of same in the United States mail, postage prepaid and properly addressed:

David J. Canupp, Esq.
J. Bradley Emmons, Esq.
Lanier, Ford, Shave & Payne, PC
2101 W. Clinton Avenue, Ste. 102
P.O. Box 2087
Huntsville, AL  35804

        /s/ Rebekah Keith McKinney
        Rebekah Keith McKinney