IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| STEPHANIE M. RONEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 5:18-cv-01482-CLS |
| | ) | |
| CITY OF HUNTSVILLE, | ) | |
| ALABAMA, | ) | |
| | ) | |
| Defendant. | ) | |

## REPLY BRIEF IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

Plaintiff's response to the City motion to dismiss filed by the City of Huntsville obfuscates the issues, invents allegations, and confuses the case law applicable to the motion. The City respectfully submits the following reply in further support of its motion to dismiss, which is due to be granted in full.

## I.     Argument

### A.     Plaintiff Has Failed to State a Title VII Sex Discrimination Claim

The City has moved to dismiss Count I on the basis that Plaintiff has failed to allege that she suffered an adverse employment action. (Doc. 29 at 5-9). Although Plaintiff disputes this conclusion, her response brief does nothing to establish that she experienced any "serious and material change in the terms, conditions, or privileges

of [her] employment." See <u>Jefferson v. Sewon Am., Inc.</u>, 891 F.3d 911, 920-21 (11th Cir. 2018) (citation omitted).

Plaintiff's core argument against the dismissal of Count I is that courts must take into account "a plaintiff's subjective preferences" in determining whether a lateral transfer (or a refusal to grant a lateral transfer) constitutes an adverse employment action. (See Doc. 32 at 7). To support this contention, Plaintiff points to the Eleventh Circuit's decision in <u>Jefferson</u>, which *actually* asks whether "a *reasonable* person faced with a choice . . . would prefer being transferred to [the new] position." (See <u>id</u>. at 8) (citing 891 F.3d at 921) (emphasis supplied). Plaintiff's argument for subjective preference is not only in error, but in fact completely misrepresents the Eleventh Circuit's holding in <u>Jefferson</u>.

For starters, the fact situation in <u>Jefferson</u> pertained to "an employee [who] allege[d] that she was denied *a different job* within the same organization," not merely a lateral transfer to a different shift or a different duty location. <u>Jefferson</u>, 891 F.3d at 921 (emphasis supplied). It is actually well-established that a mere "lateral transfer (or denial of a transfer request) is ordinarily not regarded as an adverse employment action under Title VII merely because the employee subjectively finds one position preferable to the other, absent some evidence that the plaintiff suffered a material loss of pay, prestige, or other quantifiable benefit." <u>Richardson v. Jackson</u>,

545 F. Supp. 2d 1318, 1327 (N.D. Ga. 2008) (citing, e.g., <u>Weston-Brown v. Bank of</u> <u>Am. Corp.</u>, 167 Fed. Appx. 76, 80 (11th Cir. 2006), and <u>Wall v. Trust Co. of Ga.</u>, 946 F.2d 805, 808 (11th Cir. 1991)). Even in dealing with a move to an entirely different job, however, the Eleventh Circuit in <u>Jefferson</u> did not depart from that objective standard. The Court in <u>Jefferson</u> directly held that to meet the material adversity standard, there must be a showing that the action resulted in "*serious and material* change[s] in the terms, conditions, and privileges of *employment*," such as changes to "wages, benefits, . . . rank," or "prestige." See <u>id</u>. (citing, e.g., <u>Webb-Edwards v.</u> <u>Orange Cnty. Sheriff's Office</u>, 525 F.3d 1013, 1032 (11th Cir. 2008)) (emphasis supplied).

In other words, it remains the law that a lateral transfer does not constitute an adverse employment action in the Eleventh Circuit "*merely because* the employee subjectively finds one position preferable to the other"; instead, to meet the material adversity standard, it must be plausibly shown, objectively, "*that the plaintiff suffered a material loss of pay, prestige, or other quantifiable benefit*." <u>Richardson</u>, 545 F. Supp. 2d at 1327 (emphasis supplied). In <u>Jefferson</u>, such evidence existed because the new job "had 'significantly different responsibilities' from the position in the information technology department," "had special responsibilities and carried additional 'prestige.'" <u>Jefferson</u>, 891 F.3d at 921. That simply is not the case here.

3

Plaintiff was never moved to a different job, but merely to a different duty location; and she was never denied a different job, but again, merely denied a different duty location. She continues to hold the same position with the City that she has held over the relevant years, and has suffered no loss of pay or status. Such action or inaction on the part of the City simply does not constitute an adverse employment action under relevant case law. See, e.g., Smith v. Holder, 2014 WL 3867615, at *4 (N.D. Fla. Aug. 6, 2014) (citing Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001)) (job reassignment, "without economic ramifications," is not an adverse employment decision); Richardson, 545 F. Supp. 2d at 1327.

Importantly, it makes no difference that Plaintiff claims that the transfer decisions at issue caused her "financial and personal hardships" in that she was required to "hire child care" and "take more time from her family." (Doc. 32 at 9). See, e.g., Burnette v. Northside Hosp., 342 F. Supp. 2d 1128, 1136-38 (N.D. Ga. Nov. 4, 2004) (no adverse employment action where lateral transfer "likely would incur additional vehicle maintenance *and child-care expenses*," but would "not affect [employee's] pay, job duties or job prestige"); cf., Tatroe v. Cobb County, Ga., 2006 WL 559437, at *8 (N.D. Ga. Mar. 7, 2006) (denial of assignment to the "overtime shift of [plaintiff's] choice" not an adverse employment action even though reassignment was "less convenient for her family's child-care schedule"). Plaintiff

also does not otherwise dispute the general rule that reassignment to a different shift, without "any difference in pay, benefits, responsibility level, prestige, or duties," cannot amount to an adverse employment action. See, e.g., <u>Lawson v. City of Pleasant Grove</u>, 2016 WL 2338560, at *7 (N.D. Ala. Feb. 16, 2016), *R&R adopted*, 2016 WL 1719667 (N.D. Ala. Apr. 29, 2016). And in any event, Plaintiff has not plausibly alleged that her "financial and personal hardships" would have been any less significant had she been moved back to the Natatorium, because she has not alleged that she would have been assigned to a more favorable shift at the Natatorium. (See Doc. 29 at 9 n.2).

Finally, Plaintiff cites <u>Ortiz-Diaz v. U.S. Dept. of Housing & Urban Dev.</u>, 867 F.3d 70 (D.C. Cir. 2017), a non-binding, out-of-circuit decision, to argue that reassignment to work under a *supervisor* who is "[less] likely to advance [one's] career" may constitute an adverse employment action. (Doc. 32 at 7). However, Plaintiff has at most alleged that she was required to work with a particular *co-worker*, Mick Roney. (Doc. 32 at 8-9; see also Doc. 27 ¶¶ 35, 39).[1] Plaintiff has alleged no facts in her First Amended Complaint to suggest that this co-worker possessed any authority or influence with respect to Plaintiff's career advancement

---

[1] The First Amended Complaint repeatedly portrays her supervisor as Steve Ivey. (Doc. 27, at ¶¶ 28, 32, 34,

opportunities. In fact, contrary to the assertions of her response brief, Plaintiff's First Amended Complaint does not allege *at any point*, either explicitly or implicitly, that "her prospects for advancement" were ever limited or threatened by being required to work at the Showers Center in general or with this co-worker in particular. (Cf., Doc. 32 at 9). No such allegation appears in the paragraphs pertaining to Count I (Doc. 27 ¶¶ 50-56) or anywhere else in the First Amended Complaint. "A plaintiff may not amend her complaint through argument in a brief opposing [a dispositive motion]." See Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2011). Accordingly, Ortiz-Diaz has no bearing on Plaintiff's claims.

In the absence of some "material loss" of pay, prestige, rank, or benefits — none of which are alleged here — neither an undesired lateral transfer nor a denial of a requested transfer may amount to an adverse employment action. See, e.g., Richardson, 545 F. Supp. 2d at 1327. Thus, Count I must be dismissed.

## B. Plaintiff Has Not Articulated a Hostile Work Environment Claim

Plaintiff also asserts *for the first time* in her response brief that, in addition to her claim of sex-based discrimination, she has also raised a discrete hostile work environment claim in Count I of her First Amended Complaint. (Doc. 32 at 6, 10-12). However, no explicit hostile work environment claim appears on the face of that

pleading. For that matter, Plaintiff has failed to even suggest in Count I, or anywhere else in her pleading, that her workplace was "permeated with 'discriminatory intimidation, ridicule, and insult,'" that such matters were "sufficiently severe or pervasive" to "alter the conditions of [her] employment," or that these matters "create[d] an abusive working environment." Cf., e.g., <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 116 (2002). Plaintiff's omissions not only amount to a failure to provide a "short and plain statement" of a hostile work environment claim as required by Rule 8, but they also violate the Rule 10 requirement that discrete claims be "stated in a separate count or defense" if "doing so would promote clarity." See Fed. R. Civ. P. 8(a)(2), 10(b).

This is not a new tactic for Plaintiff. In previous filings, the City warned that Plaintiff appeared to be attempting to "present more than one discrete claim for relief" in some counts, in ways that failed to give the City or the Court adequate notice of the actual claims that she was alleging. (See Doc. 9 at 6) (noting that Count I of the original Complaint "appears to assert both a Title VII sex discrimination (*and perhaps race discrimination*) claim *and* [another claim] which [has] distinct legal standards and elements of proof"); see also <u>Weiland v. Palm Beach Cnty. Sheriff's Office</u>, 792 F.3d 1313, 1322-23 & n.13 (11th Cir. 2015) (holding that shotgun pleadings of this nature "fail . . . to give the defendants adequate notice of the claims

against them and the grounds upon which each claim rests"). While the Court properly struck Plaintiff's original shotgun complaint and granted her leave to replead (Doc. 24 & 25), it seems that Plaintiff has used that opportunity to repeat this practice—and has thereby sought to avoid dismissal of this action by asserting the existence of a claim for which the First Amended Complaint provides no notice.[2]

Fortunately, the Eleventh Circuit has expressly instructed that a trial court may (and should) disregard newly alleged hostile work environment claims in precisely these circumstances. In Palmer v. Albertson's LLC, 418 F. App'x 885 (11th Cir. 2011), the plaintiff asserted the existence a hostile work environment claim for the first time in a brief opposing a dispositive motion. See id. at 889-90. As here, the complaint itself did not mention a "hostile work environment" claim at all, but instead "included only two counts" under the relevant statute: one for *discrimination*, and one for *retaliation*. Id. at 889. The Eleventh Circuit concluded:

> Even if those two counts contained sufficient factual allegations on which to base a plausible hostile work environment claim, ***[plaintiff] did not articulate that he was making that claim. He should have asserted such a claim and done so in a separate count "so that [defendant could] discern what he is claiming and frame a responsive pleading."***

---

[2]On this basis alone, Plaintiff's *entire* First Amended Complaint is due to be dismissed with prejudice. See, e.g., Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1295-96 (11th Cir. 2018) (holding that district courts should dismiss action with prejudice if, after dismissing initial shotgun pleading, plaintiff thereafter files a second shotgun complaint).

Id. (citing, e.g., <u>Davis v. Coca-Cola Bottling Co. Consol.</u>, 516 F.3d 955, 980 n.57 (11th Cir. 2008)) (internal citation omitted).

Here, the allegations in Count I—the supposed source of Plaintiff's hostile work environment claim—are couched *entirely* in allegations that Plaintiff, "rather than similarly situated male employees," was transferred to a new location with later work hours and was denied a second subsequent transfer request. (See Doc. 27 ¶ 52). In other words, the allegations of Count I are clearly concerned with purported *tangible employment actions*, rather than an alleged environment "permeated with discriminatory intimidation, ridicule, and insult" that were "sufficiently severe or pervasive" to "alter the conditions of [her] employment." See <u>Morgan</u>, 536 U.S. at 116. Put simply, Count I does not fairly encompass a hostile work environment claim and should not be construed as doing so.

This conclusion is bolstered by the fact that the phrase "hostile work environment," and even the word "hostile" alone, appear absolutely nowhere in the First Amended Complaint. If anything, then, Plaintiff's pleading provides even *less* notice than the hostile work environment claim targeted by the <u>Palmer</u> court. See 418 F. App'x at 890 ("[Plaintiff]'s use of the word[] 'harassed' in his statement of facts and 'hostile' in his . . . discrimination claim neither stated a plausible claim for relief

nor provided [defendant] with sufficient notice to defend against a harassment or hostile work environment claim.").

Plaintiff cannot now "dig through factual allegations scattered throughout other counts in [her] complaint and, at [this stage], consolidate them into a hostile work environment claim." Hargett v. Fla. Atl. Univ. Bd. of Trs., 219 F. Supp. 3d 1227, 1247 (S.D. Fla. 2016) (citing Palmer, 418 F. App'x at 889-90). Instead, the Court should simply disregard Plaintiff's attempt to assert a claim that is not articulated on the face of her pleading. See Palmer, 418 F. App'x at 889; see also Hargett, 219 F. Supp. 3d at 1247 (disregarding claim where plaintiff did not "give notice that she was alleging an independent cause of action for a discrimination-based . . . hostile work environment"); Copeland v. Ga. Dep't of Juvenile Justice, 2013 WL 1296778, at *12-13 (M.D. Ga. Mar. 27, 2013) ("Plaintiff did not specifically plead a hostile work environment claim in her complaint . . . . Plaintiff will not be permitted to raise a hostile work environment claim for the first time in her response brief.").

### C. Plaintiff Has Failed to Adequately Plead Title VII Retaliation

#### i. *Pre-Charge Activity*

Count II of the First Amended Complaint alleges retaliation. Insofar as Plaintiff has claimed retaliation on the basis of activity *prior to* the filing of her EEOC Charge of Discrimination, the City has moved for dismissal in that Plaintiff has failed to

allege that (1) she suffered any materially adverse employment action, or (2) that any such action was causally related to activity protected under Title VII. (Doc. 29 at 10-14). Plaintiff's response brief does not establish otherwise.

First, in attempting to show that the City's transfer decisions constituted "materially adverse employment actions," Plaintiff primarily incorporates her arguments concerning her sex discrimination claim in Count I. (Doc. 32 at 14). However, she does not dispute the authority cited by the City, which provides that decisions concerning *mere lateral transfers* and *changes to shift assignments or work schedules*, without more, cannot constitute materially adverse action, regardless of the alleged motivation. See, e.g., <u>Rowell v. Gestamp Ala., LLC</u>, 2018 WL 4954071, at \*3 (N.D. Ala. Oct. 12, 2018) (citing <u>Jackson v. Hall Cnty. Gov't</u>, 518 F. App'x 771, 773 (11th Cir. 2013)); <u>Worley v. City of Lilburn</u>, 2009 WL 10668430, at \*12 (N.D. Ga. June 3, 2009) (citations omitted), *R&R adopted*, 2009 WL 10672381 (N.D. Ga. Sept. 9, 2009), *aff'd*, 408 F. App'x 248 (11th Cir. 2011). Plaintiff's citation to <u>Gowski v. Peake</u>, 682 F.3d 1299 (11th Cir. 2012) — which did not involve a lateral transfer and in fact dealt only with a retaliatory *hostile work environment* claim[3] — is

---

[3]Because Plaintiff raised a hostile work environment argument *only* with respect to her sex discrimination claim in Count I (see Doc. 32 at 6, 10-12), it is assumed that Plaintiff is not suggesting the existence of an unstated *retaliatory hostile work environment* claim in Count II. However, to the extent that Plaintiff is attempting to imply that she has brought such a claim, it is due to be disregarded for the reasons stated in the preceding section—she has failed to give notice of such a claim and has failed to allege sufficient facts to state such a claim.

entirely irrelevant to this issue. See <u>Gowski</u>, 682 F.3d at 1313-14 (11th Cir. 2012) (finding existence of hostile work environment where employer spread rumors about doctors, damaged their reputation, disciplined them, instructed employees to encourage doctors to resign, and maligned them in front of colleagues).

Second, Plaintiff has failed to show that her First Amended Complaint sufficiently alleges causation for purposes of stating a Title VII retaliation claim. Plaintiff does not deny that such a claim requires a showing of *but-for* causation. See <u>Smith v. City of Fort Pierce, Fla.</u>, 565 F. App'x 774, 778 (11th Cir. 2014) (citation omitted). Plaintiff has affirmatively pled *both* that "the Williams Aquatic Center was slated to close" *and* that she understood she would need to be transferred when the Center "actually closed." (See Doc. 27 ¶¶ 33, 37; see also <u>id</u>. at ¶ 40). Thus, it cannot plausibly be argued (as Plaintiff attempts to assert) that the transfer was unrelated to the closure, and in fact *solely* related to her protected activity. Indeed, the allegations of the First Amended Complaint not only establish an obvious causal link between this scheduled closure and her November 2016 transfer, but in fact demonstrate *no other plausible reason for that transfer*.[4] Without more, the allegations of the First

---

[4]Indeed, if the City had intended to force Plaintiff to work with Mick Roney based on alleged protected activity in February 2012, nothing in the First Amended Complaint suggests that the City could not have transferred her to the same facility as Mick Roney at an earlier time. If anything, the fact that the City did not do so renders *implausible* any causal connection between the alleged protected activity and Plaintiff's eventual transfer. See <u>Thomas v. Cooper Lighting, Inc.</u>, 506 F.3d 1361, 1364 (11th Cir. 2007) (requiring "very close" temporal proximity between protected activity

Amended Complaint compel only one plausible inference—that Plaintiff was transferred away from the Williams facility because it was about to close. At any rate, Plaintiff has failed to adequately allege facts showing that the transfer "would not have occurred *in the absence of*" the City's alleged improper motive. See <u>Smith</u>, 565 F. App'x at 778 (emphasis supplied).

There is yet another reason Plaintiff also cannot show that any protected activity was the but-for cause of the City's denial of her request to transfer to the Natatorium.[5] The allegations of the First Amended Complaint affirmatively suggest her arrest for threatening a male colleague at the Natatorium played a role in the decision. (See Doc. 27 ¶ 30 (noting that a Natatorium worker had sworn out a warrant on Plaintiff); <u>id</u>. at ¶ 62 (noting that part of the reasoning for not transferring her to the Natatorium was Plaintiff's past "with the 'boys' currently working at the Natatorium"). Although Plaintiff offers her unvarnished *ipse dixit* that her arrest for threatening a male colleague at the Natatorium was "not a *legitimate* reason" for the City to deny this request (Doc. 32 at 14), she does not dispute that it played *at least*

_____

and adverse action in the absence of any other evidence of causation).

[5] Plaintiff's response brief appears to conflate two discrete acts: the *decision* to transfer her *from the Williams facility to the Showers Center*, and the *denial* of her subsequent request to transfer *to the Natatorium*. (Doc. 32 at 14). However, the allegations of Plaintiff's First Amended Complaint establish that these two decisions were completely distinct. Compare (Doc. 27 ¶ 32) (alleging that the City elected to transfer Plaintiff from Williams to the Showers Center), with (<u>id</u>. ¶¶ 36-38) (alleging that the City subsequently denied Plaintiff's request to transfer to the Natatorium).

*some role* in that denial, as her own complaint states explicitly. As such, Plaintiff has not plausibly alleged that any retaliatory intent was the *sole* cause of the City's denial of her transfer request. See <u>Smith</u>, 565 F. App'x at 778.

    ii.    *Post-Charge Activity*

Although Plaintiff alleges that she faced new retaliatory acts following the submission of her EEOC Charge (Doc. 27 ¶¶ 48-49), she does not deny that these alleged new acts occurred *before* she filed this action—in other words, *before* her EEOC Charge was "properly before [this] court." See <u>Duble v. FedEx Ground Package Sys., Inc.</u>, 572 F. App'x 889, 892 (11th Cir. 2014). As the Eleventh Circuit has recognized, such alleged post-Charge acts could not attach to "a properly raised *judicial* claim," since there was no such judicial claim in existence *at the time that those acts occurred*. See <u>id</u>. at 892-93 (emphasis supplied).

As <u>Duble</u> directly holds, to exhaust her administrative remedies as to her claim of post-Charge, pre-lawsuit retaliation, Plaintiff was required to either amend her initial EEOC Charge to include these allegations *before* filing a judicial action based on that Charge, or else to file a new EEOC Charge based on those allegations prior to filing suit. See <u>id</u>. at 893 (noting that where the alleged retaliation occurred *after* the filing of the initial EEOC charge but *before* the filing of the action in U.S. District Court, the exhaustion rules required that the plaintiff either "amend his EEOC charge

or file a new charge relating to" the new act of retaliation, rather than waiting to assert it for the first time in a lawsuit).[6] Because Plaintiff did no such thing, and because the alleged post-Charge acts did not attach to an extant "judicial claim" when they occurred, Duble requires the dismissal of Plaintiff's unexhausted claims. See id.; see also, e.g., Robinson v. Koch Foods of Ala., 2014 WL 4472611, at *2 (M.D. Ala. Sept. 11, 2014).

In addition to arguing that Plaintiff has failed to exhaust remedies as to her claim of post-Charge retaliation, the City also asserted in its motion to dismiss that Plaintiff had failed to establish a causal connection between any protected activity and the City's alleged post-Charge conduct. (Doc. 29 at 16-18). Plaintiff did not appear to make a case for causation other than to rely upon temporal proximity as a proxy for causation. As a result, the City noted that Plaintiff failed to state when, specifically, the City's alleged post-Charge retaliatory activity took place, and utterly failed to show that the temporal gap between the protected activity and post-Charge retaliation was "very close," as required. (Id. at 17). Plaintiff does not dispute this in her response brief; instead, she merely argues that her EEOC Charge — which again, did not include the *post-Charge* retaliation claim — was filed within the applicable

---

[6] Plaintiff's discussion of the fact that her earlier Charge in this case was timely does nothing to distinguish this case from Duble, as the same was true in that action. Duble, 572 F. App'x at 891-92.

180-day statute of limitation for the *initial* alleged retaliation. (Doc. 32 at 17). Those allegations obviously have no bearing on the temporal proximity between any protected activity and the City's alleged *post-Charge conduct*, and Plaintiff has still failed to articulate any other basis for a causal connection between those matters. Consequently, Plaintiff's claim of post-Charge retaliation is due to be dismissed not only because it is unexhausted, but also because she has not established causation.

### D.   Plaintiff Has Not Pleaded the Denial of a Reasonable Accommodation for ADA or Rehabilitation Act Purposes

Plaintiff acknowledges that the only accommodation she sought pursuant to the ADA or Rehabilitation Act was a transfer from the Showers Center to the Natatorium facility. (Doc. 32 at 22). As the City has noted, courts within the Eleventh Circuit and elsewhere have uniformly concluded that the "transfer[] [of] disabled individuals solely to allow the employee to work in a different setting or under a different supervisor is not an accommodation reasonably to be expected" under the ADA or Rehabilitation Act. See, e.g., <u>Anderson v. Bellsouth Telecomms., LLC</u>, No. 2:12-cv-3537-RDP, 2015 WL 461698, at \*10 n.13 (N.D. Ala. Feb. 4, 2015) (citations omitted); (see also Doc. 29 at 19 & n.4) (multiple citations omitted). Plaintiff has cited no authority to the contrary. The Court need not wait until the summary judgment stage to recognize that the sole accommodation sought by a litigant is *per*

*se* unreasonable under the ADA and Rehabilitation Act, particularly where that conclusion is not legally disputed. See, e.g., <u>Jones v. Sec'y, Dep't of Corrs.</u>, 607 F.3d 1346, 1354 (11th Cir. 2010) (argument waived where party "fail[s] to elaborate or provide any citation of authority" in support of contention); <u>Hurt v. Shelby Cnty. Bd. of Educ.</u>, 198 F. Supp. 3d 1293, 1317 (N.D. Ala. 2016) (same).

### E.  The City Did Not Interfere With Plaintiff's FMLA Rights

A fair reading of Plaintiff's FMLA interference claim in Count IV shows that it is based upon the allegation that the City "interfered with the exercise of Plaintiff's right to job restoration." (Doc. 27 ¶¶ 84-85). However, it appears that Plaintiff has now abandoned that claim. (See Doc. 32 at 21) ("Plaintiff's FMLA interference claim does not rely on whether or not she was actually restored to her prior position."). To the extent that she has not expressly abandoned it, which clearly she has, Plaintiff's job-restoration FMLA interference claim must still be dismissed because the First Amended Complaint makes clear that she was restored by the City to the position of employment held by her when the FMLA leave commenced, which is all that the FMLA requires. See, e.g., <u>Demers v. Adams Homes of Nw. Fla., Inc.</u>, 321 F. App'x 847, 849 (11th Cir. 2009); <u>Seguin v. Marion Cnty. Health Dep't</u>, 2014 WL 3955162, at *11 (M.D. Fla. Aug. 13, 2014) (no FMLA interference claim where immediate supervisor denied plaintiff's FMLA leave request, when that denial was quickly

reversed by higher-level supervisor and plaintiff never suffered any actual denial of rights).

To the extent that Plaintiff now argues that her FMLA interference claim is premised on *other* allegations, that claim is still subject to dismissal. In seeking to avoid this outcome, Plaintiff has once again mischaracterized the allegations of her First Amended Complaint. Plaintiff now asserts that "the City continues to threaten termination of her employment if she takes any leave" and otherwise "make[s] the process more difficult." (Doc. 32 at 21) (citing Doc. 27 ¶¶ 48-49). However, the First Amended Complaint actually alleges (1) that a department head "has *instructed* [an employee] to threaten Plaintiff," and (2) that these threats and other difficulties occurred "after [Plaintiff] attempted to utilize *sick and personal* leave," not FMLA leave. (Doc. 27 ¶ 49) (emphasis supplied). Notably absent from these allegations are any contentions that Plaintiff actually *received* a threat of termination or other consequences, or that such actions occurred in relation to any attempt by Plaintiff to utilize FMLA leave, as opposed to sick and personal leave. See 29 U.S.C. § 2612(a)(1). Moreover, Plaintiff has failed to show that she was actually coerced into not utilizing FMLA leave or outright denied any FMLA leave. Demers, 321 F. App'x at 849 (requiring showing of actual prejudice to establish FMLA interference claim); Seguin, 2014 WL 3955162, at *11 (no FMLA interference claim where employee

18

"*was never denied any leave that she requested*") (emphasis supplied).Similarly,

Plaintiff's allegation that she has been required to submit additional paperwork to

justify "*absences*" (Doc. 27 ¶ 49) has nothing to do with the FMLA — nor would any

such demand be unlawful in any respect.

In sum, because Plaintiff has conceded she has no job restoration claim and has

failed to allege any facts showing that the City ever denied her *FMLA* leave or

otherwise interfered with her taking *FMLA* leave, Plaintiff has failed to establish a

right to relief under the FMLA. See, e.g., <u>Seguin</u>, 2014 WL 3955162, at *11; <u>Demers</u>,

F. App'x at 849.

**F.**     <u>**Front Pay and Back Pay Are Not Available to Plaintiff**</u>

Although Plaintiff's First Amended Complaint seeks front pay in several

places, Plaintiff now concedes that she is not seeking front pay in this action. (Doc.

32 at 25 n.5).

The only justification Plaintiff offers for her claim of back pay is when she

states in conclusory fashion that she is entitled to back pay "from . . . on or about

November 18, 2016" apparently until "she reported to work at on [*sic*] January 19,

2017." (Doc. 32 at 25). However, the First Amended Complaint alleges that Plaintiff

was on FMLA leave during that time period for a variety of reasons. (Doc. 27 ¶¶ 40,

41, 44, 47). "FMLA leave is unpaid." <u>Coleman v. Court of Appeals of Maryland</u>, 566

U.S. 30, 59 (2012). One who avails themself of the entitlement to unpaid leave under the FMLA cannot then sue to recover wages lost by virtue of that very benefit. The FMLA remedy of back pay is only for circumstances in which someone is denied the benefit of the law, not *granted it*. See 29 U.S.C. § 2617(a)(1)(A)(i)(I).

Moreover, the allegations of that pleading establish that Plaintiff was never actually terminated and never suffered any other alteration of the terms or conditions of her employment. (Doc. 27 ¶ 47) (alleging that Plaintiff returned to work from FMLA leave without noting any change in pay rate or employment terms). Accordingly, Plaintiff is not entitled to back pay or any other relief, under the FMLA or any other law. See, e.g., <u>Nance v. Maxwell Fed. Credit Union</u>, 186 F.3d 1338, 1341-42 (11th Cir. 1999).

## II. <u>Conclusion</u>

For the foregoing reasons, and for those stated in the City's Brief in Support of its Motion to Dismiss (Doc. 29), all claims in Plaintiff's First Amended Complaint are due to be dismissed with prejudice.

s/ David J. Canupp
David J. Canupp

s/ J. Bradley Emmons
J. Bradley Emmons

L<small>ANIER</small> F<small>ORD</small> S<small>HAVER</small> & P<small>AYNE</small>, P.C.
P. O. Box 2087
2101 West Clinton Avenue,  Suite 102 (35805)
Huntsville, AL 35804
Phone: 256-535-1100 / Fax: 256-533-9322
E-mail: djc@lfsp.com & jbe@lfsp.com

Attorneys for Defendant City of Huntsville, Alabama

<u>CERTIFICATE OF SERVICE</u>

I certify that I have filed the foregoing with the Clerk of the Court using the ECF System, which will send notification of such filing to those parties of record who are registered for electronic filing, and further certify that those parties of record who are not registered for electronic filing have been served by mail by depositing a copy of the same in the United States mail, first class postage prepaid and properly addressed to them as follows:

        Rebekah Keith McKinney
        Philip D. DeFatta
        WATSON MCKINNEY LLP
        200 Clinton Avenue, West Suite 110
        Huntsville, AL 35801
        Phone: 256-536-7423
        Fax: 256-536-2689
        Email: [mckinney@watsonmckinney.com](mailto:mckinney@watsonmckinney.com)

on this the 8th day of February, 2019.

                              s/ David J. Canupp
                              David J. Canupp